**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MICHAEL MOSS, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 1:16-cv-08496 |
| v. | ) ) | **JURY TRIAL DEMANDED** |
| UNITED AIRLINES, INC., a Delaware corporation; UNITED CONTINENTAL HOLDINGS, INC., a Delaware corporation; UNITED AIR LINES, INC., a Delaware corporation; CONTINENTAL AIRLINES, INC., a Delaware corporation, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## CLASS ACTION COMPLAINT

Plaintiff Michael Moss ("Plaintiff"), on behalf of himself and the classes of all other similarly situated persons, complains and alleges upon information and belief based, among other things, upon the investigation made by Plaintiff by and through his attorneys, as follows:

## I.      NATURE OF ACTION

1.      This is a civil class action brought pursuant to the Uniformed Services Employment and Reemployment Rights Act of 1994, 38 U.S.C. §§ 4301 et. seq. ("USERRA"). It is brought by Plaintiff on behalf of a nationwide Class of all persons similarly situated, including current and former employees of United Airlines, Inc. ("UAL"), United Continental Holdings, Inc. ("UCH") and its wholly owned subsidiaries, United Air Lines, Inc. ("United") and/or Continental Airlines, Inc. ("Continental") (all four of which are collectively referred to herein as the "Company"), who were or are currently serving in the United States Armed Services or National Guard.

## II.    **PARTIES**

2.     Plaintiff MICHAEL MOSS ("Moss") is a citizen of the United States and a resident of the State of Colorado.

3.     Moss has been employed by the Company since February 21, 2000, and following a furlough that occurred in 2009, was reemployed by the Company's Continental subsidiary on January 24, 2012.

4.     Moss is based with the Company in Denver, Colorado, and is also a Lieutenant Colonel in the Reserve Component of the United States Marine Corps ("USMCR").

5.     Plaintiff is a qualified employee and member of the uniformed services as defined by 38 U.S.C. §4303(3) and (16).

6.     Defendant UNITED AIRLINES, INC. ("UAL") is a corporation organized under the laws of the State of Delaware with its principal place of business in the State of Illinois, and is the surviving corporate entity after United and Continental merged. At all relevant times, UAL was and is an employer as defined by 38 U.S.C. § 4303(4)(A).

7.     Defendant UNITED CONTINENTAL HOLDINGS, INC. ("UCH") is a corporation organized under the laws of the State of Delaware with its principal place of business in the State of Illinois, and was the holding company during the merger of United and Continental. At all relevant times, UCH was and is an employer as defined by 38 U.S.C. § 4303(4)(A).

8.     Defendant UNITED AIR LINES, INC. ("United"), a former subsidiary of UCH, is a corporation organized under the laws of the State of Delaware with its principal place of

business in the State of Illinois. At all relevant times, United was and is an employer as defined by 38 U.S.C. § 4303(4)(A).

9.    Defendant CONTINENTAL AIRLINES, INC.    ("Continental"), a former subsidiary of UCH, is a corporation organized under the laws of the State of Delaware with its principal place of business in the State of Illinois. At all relevant times, Continental was and is an employer as defined by 38 U.S.C. § 4303(4)(A).

10.    In October 2010, United and Continental underwent a corporate merger, whereby UCH became the parent company to both subsidiaries. On or about March 31, 2013, United and Continental merged into a single legal entity, which was subsequently renamed UAL.

11.    Whenever and wherever reference is made to individuals who are not named as defendants in this action, but were employees/agents of defendants, or any of them herein, such individuals at all times acted on behalf of defendants named in this action within the scope of their respective employments and agencies.

12.    Whenever and wherever reference is made in this Complaint to any conduct of defendants, or any of them, such allegations or references shall also be deemed to mean the conduct of each defendant, acting individually, jointly and severally.

13.    At all times relevant to this complaint, defendants were the agents and employees of their codefendants, and in doing the things alleged in this complaint were acting within the course and scope of that agency and employment.

14.    Plaintiff does not seek any relief greater than or different from the relief sought for the Class and Sub-Classes of which Plaintiff is a member. This action, if successful, will enforce an important right affecting the public interest and would confer a significant benefit, whether pecuniary or non-pecuniary, on a large class of persons.

-3-

Private enforcement is necessary and places a disproportionate financial burden on Plaintiff in relation to Plaintiff's stake in the matter.

### III.    JURISDICTION AND VENUE

15.    This complaint arises under the Uniformed Services Employment and Reemployment Rights Act ("USERRA"), 38 U.S.C. §§4301-4333. The jurisdiction of this court is founded on federal question jurisdiction, 28 U.S.C. §1331, as conferred by 38 U.S.C. §4323(b)(3).

16.    Venue is proper because the Company maintains its corporate headquarters in this district, as provided in 38 U.S.C §4323(c)(2) and 28 U.S.C. §1391(b).

17.    Pursuant to 38 U.S.C. § 4323(h), "No fees or court costs may be charged or taxed against any person claiming rights under [USERRA]."

### IV.    GENERAL FACTUAL ALLEGATIONS

18.    USERRA prohibits "discrimination against persons because of their service in the uniformed services." 38 U.S.C. §4301(a)(3).

19.    Section 4311 of USERRA protects persons who serve or have served in the uniformed services from acts of discrimination and reprisal; for example, a person "who is a member of, . . . performs, has performed, . . . or has an obligation to perform service in a uniformed service shall not be denied initial employment, reemployment, retention in employment, promotion, or any benefit of employment by an employer on the basis of that membership, . . . performance of service, . . . or obligation."

20.    Section 4316 of USERRA provides that any period of absence from employment due to or necessitated by uniformed service is not considered a break in employment, so an

employee absent due to military duty must be treated as though they were continuously employed.

21.    "Benefit" is defined as:

The term 'benefit', 'benefit of employment', or 'rights and benefits' means the terms, conditions, or privileges of employment, including any advantage, profit, privilege, gain, status, account, or interest (including wages or salary for work performed) that accrues by reason of an employment contract or agreement or an employer policy, plan, or practice and includes rights and benefits under a pension plan, a health plan, an employee stock ownership plan, insurance coverage and awards, bonuses, severance pay, supplemental unemployment benefits, vacations, and the opportunity to select work hours or location of employment."

38 U.S.C. §4303(2).

22.    Section 4311(c) provides:

An employer shall be considered to have engaged in actions prohibited:

(1) under subsection (a), if the person's membership, application for membership, service, application for service, or obligation for service in the uniformed services is a motivating factor in the employer's action, unless the employer can prove that the action would have been taken in the absence of such membership, application for membership, service, application for service, or obligation for service.

38 U.S.C. §4311(c).

***Defendant***

23.    The Company employs more than 12,000 pilots, and approximately 5,000 pilots are or were members of the United States Armed Services or National Guard.

24.    The pilots at the Company were and are subject to collective bargaining agreements ("CBAs") but this lawsuit does not require interpretation of any terms contained in these CBAs. Rather, the plain language of Company's policies and procedures at issue violates USERRA.

25.    Prior to and following the corporate merger that was completed in October 2010, the United pilots and the Continental pilots operated under separate CBAs until a United Pilot

Agreement ("UPA") covering both pilot groups was approved on or about December 15, 2012 and executed on or about December 18, 2012.

*Plaintiff Moss*

26.     Moss was commissioned as an officer with the United States Marine Corps ("USMC") on March 27, 1992, and was trained as an F/A-18 pilot. On November 16, 1999, Moss joined the USMCR where he now holds the rank of Lieutenant Colonel.

27.     Moss was hired by United on February 21, 2000 as a pilot, where he worked until furloughed in September, 2009.

28.     On January 24, 2012, Moss was recalled from furlough, began training and was placed as a pilot under the Continental subsidiary.

29.     On January 29, 2012, Moss began a period of long term military leave until March 1, 2013.  Moss returned to his position with Continental on March 2, 2013.

*Sick Time Accrual*

30.     Under Section 4316(b)(1)(B) of USERRA, employees on military leave are entitled to the same non-seniority-based benefits provided to other employees on similarly-situated, non-military related leaves of absence.

31.     One of the benefits of employment available to Moss and all Company pilots is the accrual of sick time at a rate of five (5) hours each bid period, or month.

32.     The sick time accrual rates are included in the effective CBAs, but the policy that addresses sick time accrual during periods of military service is a Company directive only, and is not addressed in any CBA.

33.     Plaintiff Moss and the Sick Time Sub-Class do not and have not accrued sick time during periods of long-term military leave that cause absences for full bid months for scheduling

purposes.

34.     Under the Continental CBA, the UPA, and earlier CBA's, pilots were allowed to accrue sick leave and vacation during association leaves of absence (ALAs), vacations, sick leave and jury duty.

35.     United pilots on military leaves of absence accrued sick time while on military leave from the 1990s until January 1, 2014.

36.     Between October 2010 (when Continental and United merged) and January 1, 2014, the Company allowed sick time accrual for the United pilots on military leave of absence but did not allow sick time accrual for Continental pilots on military leave of absence. The UPA covering both pilot groups became effective in December 2012, and even though United pilots still received sick time accrual for all of 2013, Moss and the Sub-Class did not.

37.     Plaintiff Moss and the Sub-Class did not accrue sick time while on long term military leaves of absence. Moss was not credited for sixty-five (65) hours of sick leave for the 13 months he performed military service obligations.

38.     Continental and the Company have repeatedly and intentionally failed to allow pilots who are on military leave to accrue sick time thereby denying members of the Sub-Class a benefit of employment.

39.     The Company's failure to allow some of its pilots to accrue sick time during their military leave periods while allowing other pilots on military leave, and pilots on similar, non-military leave to accrue sick time violates USERRA.

***Vacation Accrual***

40.     Company pilots earn vacation time based on their years of completed service with the Company.

41.    Plaintiff Moss and the Vacation Sub-Class do not and have not accrued vacation time during periods of long-term military leave that exceeded ninety (90) consecutive days.

42.    Company pilots on other forms of non-military leave do accrue vacation time during their leaves of absences that are greater than ninety (90) consecutive days.

43.    Continental and the Company have repeatedly and intentionally failed to allow pilots who are on military leave greater than ninety (90) consecutive days accrue vacation time thereby denying members of the Sub-Class a benefit of employment.

44.    Company's failure to allow its pilots to accrue sick time during their military leave periods while allowing pilots on similar, non-military leave to accrue sick time violates USERRA.

*LOA 25/LOA 38*

45.    USERRA requires employers to treat periods of military leave as service with the employer for purposes of vesting and the accrual of benefits, including pension benefits, and requires the employer to contribute to the employee's pension based on the pay rate the employee would have received but for the period of military service. 38 U.S.C. § 4318(3)(A).

46.    Pursuant to USERRA, pilots who take military leave are entitled to the same pension contributions they would have earned had they not taken military leave.

47.    Section 4316 of USERRA provides that any period of absence from employment due to or necessitated by uniformed service is not considered a break in employment, so an employee absent due to military duty must be treated as though they were continuously employed.  "The employer must determine the seniority rights, status, and rate of pay as though the employee had been continuously employed during the period of service." 20 C.F.R. §1002.193.

48.     A person reemployed under USERRA shall be treated as not having incurred a break in service with the employer or employers maintaining a pension plan by reason of such person's period or periods of service in the uniformed services. 38 U.S.C. §4318(a)(2)(A). "On reemployment, the employee is treated as not having a break in service with the employer or employers maintaining a pension plan, for purposes of participation, vesting and accrual of benefits, by reason of the period of absence from employment due to or necessitated by service in the uniformed services." 20 C.F.R. §1002.259.

49.     The Company maintains pilot-only money purchase, defined contribution pension plans covering all pilots.

50.     Pension contribution rates for all pilots are based on a formula that multiplies a pilot's hourly rate times the number of total pay hours (or amounts), times the pension contribution rate, presently at sixteen percent. How pension contributions are calculated when a pilot is on military leave is not described in any pilot CBA, but it has been agreed upon on as the result of recent litigation and the there is a Court approved process currently in place.

51.     As part of UPA Letter of Agreement 38 (LOA 38) which was executed on January 22, 2016, the longevity for United pilots was adjusted so that time on furlough was counted as credit towards longevity. This adjustment resulted in hourly pay rate increases for the effected pilots, dating back retroactively to December 2012.

52.     Pilots who did not take military leave during the period had a retroactive pay adjustment increase, with an additional 16% contribution to account for the pension contributions the pilots would have received had the higher pay rates been in place throughout the period.

53.     Moss and the Sub-Class only received retroactive pension contributions based on the hours and corresponding pay amounts that they were actually paid, rather than the amount of pay they would have earned had they not had military obligations.

54.     Moss and the Sub-Class are requesting and demanding that the pension portion of the LOA25/LOA38 payments be accurately calculated utilizing the hours and pay that they would have received had there been no military obligations.

55.     When comparing the pension contributions made to similarly situated pilots with no military obligations, it is irrefutable that pilots with no military obligations have been provided more pension contributions under LOA 38 by the Company than those pilots who performed military service. The more military service that was performed, the greater the disparity.

56.     The Company has knowingly, willfully, repeatedly and intentionally underpaid pension contributions under LOA 38 to pilots who have taken military leave, thereby denying members of the Sub-Class a benefit of employment.

57.     The Class' military service obligations are a motivating factor in Company's denial of the Sub-Class' pension contributions.

## V.     CLASS ACTION ALLEGATIONS

58.     Plaintiff brings this action on behalf of himself and all others similarly situated, as a class action pursuant to Rule 23(a) and 23(b)(1), 23(b)(2), and/or (b)(3) of the Federal Rules of Civil Procedure. The nationwide classes which Plaintiff seeks to represent are pilots who are or were members of the United States Armed Services or National Guard and who have taken military leave while being employed by the Company.  Each sub-class is composed of and defined as follows:

**Sick Time Sub-Class**:  All past and present pilots employed by the Company who did not accrue sick time while on periods of military leave.

**Vacation Sub-Class**:  All past and present pilots employed by the Company who did not accrue vacation time while on periods of military leave.

**LOA 25 Sub-Class**:  Those furloughed United pilots whose longevity was capped under the UPA Letter of Agreement 25 (LOA 25), and who performed military service during the period from December 2012 to January 2016, and whose retroactive pension payments under Letter of Agreement 38 (LOA 38) were improperly lower than they should have been in accordance with USERRA.

59.    Plaintiff is a member of each Sub-Class he seeks to represent.

60.    The members of each Sub-Class are sufficiently numerous that joinder of all members is impracticable. Plaintiff is informed and believes that the Sick Time Sub-Class exceeds 2,000 present and former Company pilots. The exact size of the Class is ascertainable through Company's records, including but not limited to Company's employment records.

61.    Plaintiff is informed and believes that the Vacation Sub-Class exceeds 4,000 present and former Company pilots. The exact size of the Class is ascertainable through Company's records, including but not limited to Company's employment records.

62.    Plaintiff is informed and believes that the LOA 25 Sub-Class exceeds 1,000 present and former Company pilots. The exact size of the Class is ascertainable through Company's records, including but not limited to Company's employment records.

63.    There are questions of law and fact common to the Class, and these questions predominate over individual questions. Such questions include, without limitation:

   a.    whether the Company's failure to provide sick time accrual to pilots on military leave violates USERRA;

b.      whether the Company's failure to provide vacation accrual to pilots on military leave violates USERRA;

c.      whether the Company's failure to accurately make pension contributions to pilots on military leave under the provisions of LOA 38 violates USERRA;

d.      whether defendants' acts and practices have violated USERRA by discriminating against Company pilots who are members of the Armed Forces and have taken military leave;

e.      whether Plaintiff and the Classes are entitled to compensatory and/or liquidated damages; and

f.      whether injunctive and other equitable remedies for the Sub-Classes are warranted.

64.     The claims of Plaintiff are typical of the claims of the Sub-Classes.

65.     The named Plaintiff will fairly and adequately represent and protect the interests of the Sub-Classes, and has no conflict of interests with the Sub-Classes.

66.     Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action. Plaintiff has retained adequate counsel who have substantial experience and success in the prosecution of class actions and complex business litigation matters.

67.     Class certification is appropriate pursuant to Fed. R. Civ. Proc. Rule 23(b)(2) because the Company has acted on grounds generally applicable to the Sub-Classes, making appropriate declaratory and injunctive relief to Plaintiff and the Sub-Classes as a whole. The Sub-Class members are entitled to injunctive relief to end the Company's practices that have caused military affiliated pilots to be excluded from certain benefits and to be treated differently than pilots who have taken comparable types of leave and/or pilots without military affiliations.

## VI.    CLAIMS ALLEGED

### COUNT I
### (Sick Time Accrual) Violations of 38 U.S.C. §4301, *et seq*.
### (On behalf of the Sick Time Sub-Class)

68.    Plaintiff Moss hereby alleges and incorporates all paragraphs 1-67 above by reference herein.

69.    Plaintiff's protected status as a USMC Reservist was a substantial motivating factor in Company's denial of benefits, conditions and privileges of Plaintiff's employment without good cause.

70.    Company violated USERRA including but not limited to Section 4316, by depriving Plaintiff and the Sub-Class employment benefits by disallowing the accrual of sick time credit during periods of military leave even though those same benefits are available to other employees during periods of non-military leave, and other pilots during periods of military leave.

71.    Plaintiff's and the Sub-Class's service obligations were a motivating factor in Company's discriminatory actions.

72.    Company knowingly and willfully violated USERRA, among other ways, by discriminating against Plaintiff and the Sub-Class members, and by denying them employment benefits "on the basis of" their "obligation to perform service in a uniformed service."

73.    As a direct and proximate result of the conduct of Company, as set forth in this count, Plaintiff and the Sub-Class have suffered injuries and damages including but not limited to loss of past and future benefits, all to his damage in an amount to be proven at trial.

74.    Plaintiff alleges such violations of USERRA were willful and requests liquidated damages to the Sub-Class in an additional amount equal to the present value of their lost sick time benefits pursuant to Section 4323(d)(1)(C).

## COUNT II
### (Vacation Time Accrual) Violations of 38 U.S.C. §4301, *et seq*.
### (On behalf of the Vacation Sub-Class)

75.     Plaintiff Moss hereby alleges and incorporates all paragraphs 1-67 above by reference herein.

76.     Company violated USERRA including but not limited to Section 4316, by depriving Plaintiff and the Sub-Class employment benefits by disallowing the accrual of vacation time during periods of military leave even though those same benefits are available to other employees during periods of non-military leave.

77.     Plaintiff's and the Sub-Class's service obligations were a motivating factor in Company's discriminatory actions.

78.     Company knowingly and willfully violated USERRA, among other ways, by discriminating against Plaintiff and the Sub-Class members, and by denying them employment benefits "on the basis of" their "obligation to perform service in a uniformed service."

79.     As a direct and proximate result of the conduct of the Company as set forth in this count, Plaintiff and the Sub-Class have suffered injuries and damages including but not limited to loss of past and future benefits, with damages in an amount to be proven at trial.

80.     Plaintiff alleges such violations of USERRA were willful and requests liquidated damages to the Sub-Class in an additional amount equal to the present value of their lost vacation time benefits pursuant to Section 4323(d)(1)(C).

## COUNT III
### (LOA 38) Violations of 38 U.S.C. §4301 *et seq*.
### (On behalf of the LOA 25 Sub-Class)

81.     Plaintiff Moss hereby alleges and incorporates all paragraphs 1-67 above by reference herein.

82.     Company violated and continues to violate USERRA including but not limited to Sections 4311 and 4318, by depriving Plaintiff and the Sub-Class benefits of employment through the discriminatory practice of underpaying the pension portion of the LOA 38 retroactive payments.

83.     Company knowingly and willfully violated Sections 4311 and 4312 of USERRA, among other ways, by discriminating against Plaintiff, and by denying him employment benefits "on the basis of" his "obligation to perform service in a uniformed service."

84.     As a direct and proximate result of the conduct of the Company as set forth in this count, Plaintiff has suffered injuries and damages including but not limited to, loss of past and future benefits, all to his damage in an amount to be proven at trial.

85.     Plaintiff alleges such violations of USERRA were willful and requests liquidated damages to the Sub-Class in an additional amount equal to the amount of their lost benefits pursuant to Section 4323(d)(1)(C).

## VII.    JURY DEMAND

86.     Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury of all issues triable as of right by a jury in this action.

## VIII.   REQUEST FOR RELIEF

WHEREFORE, based on the foregoing, Plaintiff prays for relief against Defendants, and each of them, as follows:

A.      Determine that this action may proceed and be maintained as a class action, designating Plaintiff as Lead Plaintiff, and certifying Plaintiff as the Class representative under Rule 23 of the Federal Rules of Civil Procedure and their counsel of record as Class Counsel;

B.      Declare that the acts and practices complained of herein are unlawful and are in violation of USERRA;

C.     Require that the Company fully comply with the provisions of USERRA by providing Plaintiff and Sub-Class Members all employment benefits denied them as a result of the Company's unlawful acts and practices described herein;

D.     Enjoin the Company from taking any action against Plaintiff and members of the Sub-Classes that fail to comply with the provisions of USERRA;

E.     Award fees and expenses, including attorneys' fees pursuant to 38 U.S.C. §4323(h);

F.     Award Plaintiff and the Sub-Class prejudgment interest on the amount of lost wages or employment benefits due;

G.     Order that the Company pay compensatory and/or liquidated damages in an amount equal to the amount of lost compensation and other benefits suffered due to their willful violations of USERRA;

H.     Grant an award for costs of suit incurred; and

I.     Grant such other and further relief as may be just and proper and which Plaintiff and the Class may be entitled to under all applicable laws.

Dated: August 30, 2016

Respectfully submitted,

MICHAEL MOSS, individually and on behalf of all others similarly situated

By:    */s/ Joseph J. Siprut*

Joseph J. Siprut
*jsiprut@siprut.com*
Richard L. Miller II
*rmiller@siprut.com*
Richard S. Wilson
*rwilson@siprut.com*
SIPRUT PC
17 North State Street
Suite 1600
Chicago, Illinois 60602
Phone: 312.236.0000
Fax: 312.878.1342

-16-

Brian J. Lawler*
*blawler@pilotlawcorp.com*
**PILOT LAW, P.C.**
1551 9th Avenue
San Diego, California 92101
Phone: 866.512.2465
Fax: 619.231.4984

Gene J. Stonebarger*
*gostonebarger@stonebargerlaw.com*
**STONEBARGER LAW**
75 Iron Point Circle
Suite 145
Folsom, California 95630
Phone: 916.235.7140
Fax: 916.235.7141

*Seeking admission *pro hac vice*

***Counsel for Plaintiff
and the Proposed Putative Classes***