UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICHAEL MOSS, individually and on behalf of all others similarly situated, | |
| Plaintiff, | No. 16 C 8496 |
| v. | Judge Thomas M. Durkin |
| UNITED AIRLINES, INC.; UNITED CONTINENTAL HOLDINGS, INC.; UNITED AIR LINES, INC.; and CONTINENTAL AIRLINES, INC., | |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

Michael Moss alleges that pilots for the defendant airlines were deprived of sick time accrual (Count I), vacation time accrual (Count II), and pension payments (Count III), during military leave in violation of the federal Uniformed Services Employment and Reemployment Rights Act (the "Act"). The Court certified a sub-class for each count. *See* R. 68. Defendants have moved for summary judgment on all three counts, R. 92, and Plaintiffs have cross-moved for summary judgment on Counts I and II, R. 95. Plaintiffs' motion is denied, and Defendants' motion is granted in part and denied in part.

**Legal Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett,* 477 U.S. 317,

322-23 (1986). The Court considers the entire evidentiary record and must view all of the evidence and draw all reasonable inferences from that evidence in the light most favorable to the nonmovant. *Horton v. Pobjecky*, 883 F.3d 941, 948 (7th Cir. 2018). To defeat summary judgment, a nonmovant must produce more than a "mere scintilla of evidence" and come forward with "specific facts showing that there is a genuine issue for trial." *Johnson v. Advocate Health and Hosps. Corp.*, 892 F.3d 887, 894, 896 (7th Cir. 2018). Ultimately, summary judgment is warranted only if a reasonable jury could not return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## Background

In 2010, defendants United Air Lines, Inc., and Continental Airlines, Inc., merged by becoming wholly-owned subsidiaries of defendant United Continental Holdings, Inc. *See* R. 99-1 at 2-3 (¶ 1). In 2013, United Air Lines and Continental Airlines merged into United Airlines, Inc. *Id.* (unlike the merging entity, the name of the merged entity contains no space between "air" and "lines") In 2019, the holding company changed its name to United Airlines Holdings, Inc. *Id.* United and Continental pilots were governed by separate collective bargaining agreements until 2014 when a single agreement was adopted for all pilots of the merged entity. *See id.* at 39 (¶ 32).[1]

---

[1] Defendants argue that the holdings company should be dismissed because it has never been the employer of any of the Plaintiffs. Defendants also argue that the merged subsidiary entities should be dismissed because they no longer exist. But this case concerns conduct that occurred both before and after the multiple relevant mergers. Defendants' arguments do not address how liabilities were transferred in

Before the merger, United pilots accrued sick days during all periods of military leave, *see id.* at 41 (¶ 35), and accrued vacation days during the first 30 days of military leave, *see id.* at 42 (¶ 37). Before the merger, Continental pilots accrued sick days through the first 30 days of military leave, *see id.* at 44 (¶ 40), and accrued vacation days through the first 90 days of military leave, *see id.* 45-47 (¶ 42). Since the merger, Defendants' pilots accrue vacation days and sick days through 90 days of military leave. *See id.* at 14-16, 20 (¶¶ 11, 16). Plaintiffs claim that the vacation and sick time accrual policies both pre- and post-merger deprived them of benefits during military leave in violation of the Act.

## Analysis

The Act provides that "[a] person who . . . has an obligation to perform service in a uniformed service shall not be denied . . . any benefit of employment by an employer on the basis of that . . . performance of service, or obligation." 38 U.S.C. § 4311(a). Further, the Act makes a distinction between "seniority" based benefits and "other" benefits:

> A person who is reemployed under this chapter is entitled to the seniority and other rights and benefits determined by seniority that the person had on the date of the commencement of service in the uniformed services plus the additional seniority and rights and benefits that such person would have attained if the person had remained continuously employed.

---

these mergers. For the Court to grant summary judgment based on these arguments, Defendants would need to produce evidence that none of the entities Defendants seek to dismiss currently maintains liability for the claims at issue in this case. And in any case, it will be necessary to reach these arguments only if the Court intends to grant summary judgment in Plaintiffs' favor on the merits of any of their claims. We haven't reached that point.

3

38 U.S.C. § 4316(a);

> [A] person who is absent from a position of employment by reason of service in the uniformed services shall be . . . entitled to such other rights and benefits not determined by seniority as are generally provided by the employer of the person to employees having similar seniority, status, and pay who are on furlough or leave of absence[.]

38 U.S.C. § 4316(b)(1)(B). A benefit is considered seniority-based when "the nature of the benefit [is] a reward for length of service, rather than a form of short-term compensation for services rendered." *Coffy v. Republic Steel Corp.*, 447 U.S. 191, 197-98 (1980); *see also DeLee v. City of Plymouth, Ind.*, 773 F.3d 172 (7th Cir. 2014).

The Supreme Court has recognized that the problem with this standard is that "even the most traditional kinds of seniority privileges could be as easily tied to a work requirement as to the more usual criterion of time as an employee." *Coffy*, 447 U.S. at 203. In other words, there is no objective difference between a "work requirement" (or "compensation for services rendered") and "time as an employee" (or "length of service"), because *employees spend their time working*. The work accomplished and the time spent accomplishing it are two sides of the same job-coin. True, length of service—or seniority—is generally measured in years, whereas employees are often compensated for services rendered by the hour. But both involve providing a benefit (whether money, vacation time, etc.) per unit of time worked. The inherent tie between time and work means that even rewards for length of service over months or years can be framed as compensation for services rendered. *See Alabama Power Co. v. Davis*, 431 U.S. 581, 592-93 (1977) ("It is obvious that pension

4

payments have some resemblance to compensation for work performed. . . . The same observations, however, can be made about any benefit and therefore are of little assistance in determining whether a particular benefit recompenses labor or rewards longevity with an employer.").

Since all benefits can be described with reference to a certain period of time worked, "the particular formula" by which "benefits [are] calculated," i.e., the length of the period of time worked necessary to receive any given benefit, is not the "crucial factor" in determining whether the benefit is seniority-based for purposes of the Act. *See Alabama Power*, 431 U.S. at 592, and *Coffy*, 447 U.S. at 203. Rather, it is the "real nature" of the benefit that is key to determining whether a benefit is a "reward for length of service" or "compensation for services rendered." *Alabama Power*, 431 U.S. at 588-89.

By "real nature" the Supreme Court appears to mean whether the benefit is a future-oriented longevity incentive, or backward-looking compensation for work already performed. The Supreme Court has held that benefits like pensions, severance pay, or unemployment pay are seniority-based because they concern an exchange of financial security for an employee's long-term commitment to an employer, i.e., accrual of seniority. *See Accardi v. Penn. R. Co.*, 383 U.S. 225, 230 (1966) ("[The] use of the label 'compensated service' cannot obscure the fact that the real nature of these payments was compensation for loss of jobs. And the cost to an employee of losing his job is not measured by how much *work he did in the past*—no matter how calculated—but by the rights and benefits he forfeits by giving up his

5

job.") (emphasis added); *Alabama Power*, 431 U.S. at 593-94 (pension credit was held to be seniority-based because a period of years is required for a pension to vest and the purpose of a pension is to assure financial security of long-time employees in retirement); *Coffy,* 447 U.S. at 205 ("[T]he purpose and function of the [weekly supplemental unemployment benefits] is to provide economic security during periods of layoff to employees who have been in the service of the employer for a significant period."); *see also DeLee*, 773 F.3d at 173 (holding that an annual bonus that could be prorated monthly was a seniority-based benefit, because the express purpose of the bonus was to be "an incentive for police and firemen to remain in the service of the City").

By contrast, the Supreme Court has held that vacation days accrued hourly were not seniority-based, because a holding to the contrary would be "sharply inconsistent with the common conception of a vacation as a reward for and respite from a lengthy period of labor." *Foster v. Dravo Corp.*, 420 U.S. 92, 101 (1975). In other words, unlike the pensions, severance pay, or unemployment pay addressed in *Accardi*, *Alabama Power*, and *Coffy*, vacation days do not incentivize longevity of employment, but rather compensate for (or in the Supreme Court's words, provide a "respite from") the effort an employee has expended in the past. This reasoning is reflected in the federal regulations implementing the Act. *See* 20 C.F.R. § 1002.150

6

("As a general matter, accrual of vacation leave is considered to be a non-seniority benefit[.]").[2]

### A. Count II: Vacation Time

#### 1. Seniority-Based Benefits Under § 4316(a)

Despite the extent of the authority that vacation days generally are not a seniority-based benefit, Plaintiffs argue that "vacation accrual is a seniority-based benefit because it accrues solely with the passage of time." R. 95 at 11. It is true that under the collective bargaining agreement at issue the number of vacation days a pilot is eligible to accrue in a given year is determined by the pilot's "years of service." *See* R. 94-2 at 17 (p. 135, § 11-A-3) (for instance, 14 days each year for 1-4 years of service, 21 days each year for 5-10 years of service, and so on). But the fact that eligibility for a certain number of vacation days is expressly tied to "years of service" does not show that actual accrual of the vacation days in a given year is a seniority-based benefit. Indeed, the collective bargaining agreement provides that vacation accrual will be reduced by one-twelfth for every month on leave of absence. *See id.* § 11-A-4.[3] Thus, actual accrual of vacation days (as opposed to eligibility for a certain number of vacation days) is much more akin to compensation for services rendered than a reward for length of service. Of course, actual accrual of vacation days also

---

[2] Because the Supreme Court has previously addressed a claim regarding vacation time accrual under the Act, the Court starts its analysis with Count II, rather than Count I, which concerns sick time accrual, a benefit the Supreme Court apparently has not previously addressed.

[3] By contrast, "longevity," which is akin to seniority under the collective bargaining agreement, generally continues to accrue while a pilot is on a leave of absence. *See id.* at 30 (p. 148) § 12-I.

7

occurs with the passage of time. But as discussed, this is true of any employment benefit and is not particularly informative, let alone dispositive, of whether vacation day accrual is seniority-based.

Furthermore, pilots who do not use all their vacation days by the end of the year are compensated with an additional pension contribution for the first 21 unused days, and regular pay for any additional unused days. *See id.* at 22 (p. 140) § 11-H. The "forfeiture" of vacation days (as the agreement titles it) is necessary because pilots who haven't used vacation days have worked more days in a year than their salary compensates them for. A pilot's salary contemplates that the pilot will take a certain number of vacation days. If the pilot fails to take that vacation, the pilot has worked more than anticipated and must be compensated for the unused vacation days. Since the days are forfeited at the end of each year, they should not be understood as any more of an incentive for continued employment with the company than continued receipt of salary (which is of course *compensation* and certainly not a seniority-based benefit). This focus on compensation for work completed in the past shows that the "real nature" of vacation days in this case is not a reward for length of service. Thus, vacation days are not a seniority-based benefit under the collective bargaining agreement.

Plaintiffs rely heavily on a case from the Western District of Pennsylvania in which the court found that vacation time accrual was seniority-based. *See Wingard v. Allegheny County*, 2017 WL 1755974 (W.D. Pa. May 3, 2017). The court reasoned that, "[u]nlike *Foster*," in which the Supreme Court held that vacation days were not

8

a seniority-based benefit, the plaintiff in *Wingard* "cannot earn more vacation by working more and does not have to work a requisite amount of weeks in a calendar year to receive vacation that year." *Id.* at *2. But *Wingard* is distinguishable for two reasons. First, unlike the collective bargaining agreement in this case, the *Wingard* agreement apparently did not dock vacation days for leaves of absence generally. Second, and more important, the plaintiff's claim in *Wingard* was based on the employer having "incorrectly reduced his seniority" resulting in a corresponding reduction in the number of vacation days the plaintiff was eligible to take. *Id.* at *1. Plaintiffs have not made an analogous claim in this case. Rather, Plaintiffs claim that Defendants failed to allow pilots to accrue vacation days "during periods of long-term military leave." R. 76 ¶ 44. Plaintiffs here do not allege that they were deprived of seniority—and the corresponding vacation eligibility—because of military leave. But that appears to have been the claim at issue in *Wingard*. And to the extent that *Wingard's* holding implies that the vacation day benefits at issue in this case are seniority-based, this Court finds that reasoning unpersuasive for all the foregoing reasons.

### 2. Other Benefits Under § 4316(b)(1)

Since vacation days are not a seniority-based benefit, Plaintiffs are entitled to only the "other" benefits "generally provided," 38 U.S.C. § 4316(b)(1)(B), to employees on "comparable leaves of absence." *Crews v. City of Mt. Vernon*, 567 F.3d 860, 865 (7th Cir. 2009). Plaintiffs argue that they are entitled to accrue vacation days on military leave "because [Defendants] provide[] those benefits to employees on

9

comparable forms of leave." R. 99 at 10. The glaring problem with this argument is that, contrary to Plaintiffs' argument, the collective bargaining agreement does *not* permit accrual of vacation days during leaves of absence longer than 30 days. *See* R. 94-2 at 17 (p. 135) § 11-A-4. Indeed, the agreement includes a special exception from this general rule such that pilots on military leaves of up to 90 days are permitted to accrue vacation days. *Id.* at 25 (p. 143) § 12-D-2.

Despite the fact that vacation time is not generally accrued during leaves of absence, it is accrued during jury duty, "association leave," and "sick leave." Plaintiffs argue that these three forms of "leave" are "comparable" to military leave, such that vacation time accrual should be available to military leave longer than 90 days.

***Jury Duty.*** It is undisputed that the general prohibition on accrual of vacation days during leaves longer than 30 days does not apply to leave for jury duty. Plaintiffs argue that should be true for military leave as well. But leave for jury duty rarely approaches a complete month, *see* R. 99-1 at 23 (¶ 20),[4] so it can't be a basis to argue that Defendants "generally provide" vacation days for leave over 30 days, let alone 90 days.[5]

Furthermore, Plaintiffs barely mention jury duty in their opposition brief to Defendants' motion. In passing, Plaintiffs cite *Waltermyer v. Alumnium Company of*

---

[4] Plaintiffs dispute this fact with reference to data Defendants produced on the length of jury duty pilots have taken. But the Court's review of that data shows that Plaintiffs incorrectly added jury duty days that were not consecutive. *See* R. 99-3 at 21-25.

[5] Thus, the fact that prior to the merger, some class members did not accrue vacation days during military leaves longer than 30 days (as opposed to 90 days under the current, post-merger collective bargaining agreement), does not change the analysis.

10

*America*, 804 F.2d 821 (3d Cir. 1986), and *Duffer v. United Continental Holdings*, 173 F. Supp. 3d 689, 705 (N.D. Ill. 2016). In *Waltermyer*, employees on jury duty (as well as sick leave, bereavement leave, leave for service as a witness in court, and during some layoffs) received pay for holidays that occurred during the leave, whereas employees on military leave did not. The court found military leave comparable—and thus the deprivation of holiday pay impermissible—because, like the other forms of leave, military leave was "both compulsory and short." *Id.* at 825. The district court in *Duffer* made a similar finding. But regardless of whether this Court agrees that jury duty and military leave are analogously compulsory, this case is not about short leaves of absence since Defendants permit pilots to accrue vacation days on leaves up to 90-days long, which is well beyond the normal length of jury duty service. To the extent Defendants permit accrual of vacation days during jury duty lasting longer than 90 consecutive days, there can be no reasonable dispute that jury duty service of that length is highly unusual. For that reason, Defendants cannot be said to "generally provide" the benefit of vacation day accrual during jury duty longer than 90 days.

***Association Leave.*** Plaintiffs also argue that they should accrue vacation days on military leave because pilots accrue benefits during what are known as "Association Leaves of Absence," or "ALA," the "Association" being the pilots' labor union. *See* R. 94-2 at 61 (p. 433) § A. In addition to providing for leave to work for the union, this section of the agreement also provides that "[a] Pilot shall be granted an ALA to staff an executive position with any agency or branch of the Federal

11

Government directly connected with aviation; e.g., FAA, DOT, or Congressional Staff, or to serve as an elected member of the United States Congress." *Id.* § A-2.

Plaintiffs argue generally that ALA "appear[s] to provide the most favorable benefits." R. 99 at 12. But Plaintiffs do not address the specific provisions of the agreement concerning benefits provided during ALA. It is true that during ALA, "[a]ll benefits and accruals shall be continued as if a Pilot on ALA were in Active Service." *Id.* at 63 (p. 435) § D-1. But this accrual is premised on the assumption that "[t]he Association shall reimburse the Company for the cost of such benefits." *Id.* Absent that reimbursement, the Court finds that the agreement does not provide for accrual of benefits during an ALA. Therefore, even if ALA is comparable to military leave, Defendants do not generally provide benefits during ALA since the benefits are covered by the union. Making no argument to the contrary, Plaintiffs have conceded this analysis.

***Sick Leave.*** Lastly, Plaintiffs argue that "sick leave" is comparable to military leave. R. 99 at 12-13. But under the collective bargaining agreement, "sick leave" is not a "leave of absence"; the sick leave provisions are in a separate section from leaves of absence. One could argue that the involuntary nature of illness is comparable to the involuntary nature of military leave once one has volunteered. But, eligibility to take sick leave is governed by days that accrue while a pilot is working. And those days will generally only cover relatively short-term illness. Pilots suffering a medical condition lasting longer than common illness or injury eventually will have to take "Medical Leave" or "Family & Medical Leave." These forms of extended leave are

12

provided for in the section governing leaves of absence, not the section governing sick leave. *See* R. 94-2 at 25-26 (pp. 143-44) §§ 12-D, E. And as discussed, the agreement does not provide for accrual of vacation time during these leaves of absence generally. This distinction shows that "sick leave" is not a "leave of absence" under the agreement. (This comports with the commonly understood distinction between sick or vacation days which are accrued and spent on vacations and short-term illness which happen to all people every year, and leaves of absence which are granted based on the length of some underlying, generally unforeseen circumstance.) So the fact that vacation days are accrued during "sick leave" is not a basis to find that the agreement generally provides for vacation time during a leave of absence comparable to military leave.

Therefore, Defendants' failure to provide accrual of vacation days during military leave longer than 90 days does not violate the Act.

### B. Count I: Sick Time

Despite attempting to shoehorn "sick leave" into the collective bargaining agreement's "leave of absence" section when addressing Count I, in Count II, Plaintiffs focus on the fact that "sick leave" is not a leave of absence but an accrual of "sick time," analogous to the accrual of "vacation time." Likely because there is no material difference in the accrual of "sick time" and "vacation time" under the collective bargaining agreement,[6] Plaintiffs' arguments on Count I mirror their

---

[6] Of course, the numbers of hours or days accrued, and the rates of accrual, are different under the agreement's vacation and sick time sections. But those are differences in the "particular formulas" by which accrual is "calculated," *see Alabama*

13

arguments on Count II. Therefore, the Court grants summary judgment to Defendants on Count I for the same reasons it grants summary judgment to Defendants on Count II.

### C. Count III: Pension Payment

Counts I and II are based on § 4316. In Count III, Plaintiffs claim that Defendants violated a different section, namely § 4318, by failing to properly calculate a rate of pay resulting in lower pension contributions for certain pilots. The Court turns to Count III now.

The Act does not require employers to pay employees while they are on military leave. But upon return from military leave, an employee is entitled to the pension benefits they would have received "not having incurred a break in service with the employer." 38 U.S.C. § 4318(a)(2)(A). In other words, an employer of an employee returning from military service must "allocate the amount of any employer contribution for the person in the same manner and to the same extent the allocation occurs for other employees during the period of service." 38 U.S.C. § 4318(b)(1). Specifically, "[f]or purposes of computing an employer's [pension] liability . . . or the employee's [pension] contributions . . . , the employee's compensation during the period of service . . . shall be computed . . . at the rate the employee would have received but for the period of service[.]" 38 U.S.C.A. § 4318(b)(3)(A).

---

*Power*, 431 U.S. at 592, and thus are not material to the Court's analysis of Plaintiffs' claims.

14

In this case, under an amendment to the collective bargaining agreement, Defendants agreed to a one-time extension of the longevity date of certain pilots who had been furloughed such that they were owed additional compensation. *See* R. 99-1 at 33-36 (¶¶ 28-29). As usual with any compensation Defendants pay, 16% of the compensation was paid to the pilots' pensions. *Id.*

This special payment was made to 1,600 pilots, some of whom were on military leave for parts of the relevant pay-period. *Id.* at 34-38 (¶¶ 29, 31). It is undisputed that the compensation amounts excluded time spent on military leave. *See* R. 99-1 at 48-49 (¶¶ 2-4). It is also undisputed that the 16% pension contributions were made based on the compensation that did not include time spent on military leave. *Id.*

Plaintiffs claim that these payments short-changed pilots who had been on military leave during the relevant time period, because the pension payments should have been made as a percentage of their actual compensation plus the compensation they would have earned during the time they were on military leave—what Plaintiffs refer to as their "deemed" compensation. Defendants argue that the 16% of compensation paid to the pilots' pensions were not "pension contributions," for purposes of the Act, but were "wage payments" to which pilots are not entitled during military leave. Defendants, however, cite no authority for their argument that the pension portion of the compensation at issue here is not a "pension contribution" for purposes of § 4318. Maybe this distinction is more apparent to counsel more familiar with the Act who have greater knowledge of customary collective bargaining agreement terms than the Court. But if that is the case, that information went

15

unexpressed in the briefs. The authority Defendants cited is an insufficient basis to grant Defendants' motion for summary judgment on Count III. (Plaintiffs did not move for summary judgment on this count.)

Indeed, both parties gave short shrift to Count III in their briefs. While the Court believes there may be merit to Plaintiffs' argument that § 4318 requires pension payments to be made based on deemed earnings, and that Defendants failed to comply with that law in this case, the Court is reluctant to make a definitive finding on such minimal briefing. Furthermore, the Court wonders why, if that is all there is to it, Plaintiffs didn't cross-move for summary judgment on Count III, along with their motion on Counts I and II? Indeed, having denied Defendants' motion for summary judgment on Count III, the Court does not perceive there to be any questions of fact to be decided by trial, this case seeming instead to turn on rather straightforward issues of statutory interpretation and application to undisputed facts.

## Conclusion

Therefore, Plaintiffs' motion for summary judgment, R. 95, on Counts I and II is denied. Defendants' motion for summary judgment, R. 92, is granted in part with respect to Counts I and II, and denied in part with respect to Count III. A status hearing is set for Tuesday, November 19, 2019 at 9 a.m. The parties should be prepared to discuss at the status hearing how the case should proceed on Count III, including whether, in light of the Court's preliminary opinion on Count III, referral to the magistrate judge for settlement discussions would be helpful. If the parties are

not interested in a referral for settlement discussions, the Court's current suggestion is that cross-motions on Count III, supported by more thorough briefing and Local Rule 56.1 statements of fact, would be the best way forward. If the parties agree with this suggestion, they should contact the Courtroom Deputy with an agreed briefing schedule and the status hearing will be canceled. If either side believes the claim is not amenable to summary judgment, they should be prepared to identify the genuine questions of material fact requiring a trial at the status hearing.

                                                    ENTERED:

                                                    *Thomas M. Durkin*

                                                    Honorable Thomas M. Durkin
                                                    United States District Judge

Dated: November 12, 2019